FILED
JAMES BONINI
CLERK

05 MAY 18 PM 3:33

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SICPA NORTH AMERICA, INC.<br>7145 Boone Ave., N. #200<br>Brooklyn Park, MN 55428 | ) ) ) ) | CIVIL CASE NO. 1:05CV341 |
| Plaintiff, | ) ) | JUDGE L. BECKWITH |
| vs. | ) ) ) | COMPLAINT |
| THOMAS SOCHA<br>1130 Avalon Dr.<br>Mainville, OH 45039 | ) ) ) ) | |
| Defendant. | ) | |

As and for its Complaint against Thomas Socha ("Socha" or "Defendant"), the Plaintiff, SICPA North America, Inc. ("SICPA"), alleges as follows:

## PARTIES

1. SICPA is a Delaware corporation with its headquarters in Minnesota. It is the creator of innovative security solutions and manufacturer of high quality printing inks for labels, packaging, tobacco packaging, plastic cards, CD's, DVD's and other industries.

2. Socha is an individual and SICPA's former Vice-President of Manufacturing, who resides at 1130 Avalon Drive, Mainville, Ohio.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a), because there is complete diversity of citizenship and the amount in controversy exceeds the sum of $75,000.

-2-

4. Venue in this Court is proper, pursuant to 28 U.S.C. §1391(a) as Defendant resides in this judicial district and a substantial part of the events giving rise to the claims occurred within this district.

## SOCHA'S EMPLOYMNT HISTORY AND COMPETITION

5. Socha began his employment with Kroma Printing Inks Corporation of Canada ("Kroma") on or about August 14, 2000. As a condition of his employment, Kroma required that Socha sign an Executive Employment Agreement, which contains a non-competition provision, acknowledgement of trade secrets and confidential information, and a non-solicitation clause.

6. In or about August 2000, Kroma was purchased by SICPA, and Socha resumed the same title and job duties for SICPA as he previously performed for Kroma.

7. While employed with SICPA, Socha was employed as the Vice President of Business Development (sales) and most recently the Vice President of Technology.

8. Socha resigned from SICPA on February 25, 2005 and went to work for INX as a Sales Director, a direct competitor of SICPA. Specifically, Socha, on behalf of INX, will develop and maintain customer sales accounts for inks and coatings manufactured and marketed by INX.

9. By virtue of his employment with SICPA, Socha gained access to confidential information of SICPA, including formulas, technical information, budget, marketing and financial information, and the identity of SICPA's customers and potential customers, including but not limited to, their names, addresses and contact information.

10. Based upon information and belief, Socha has retained a book of SICPA's proprietary formulas, specifically hundreds of proprietary formulas relating to SICPA's

packaging portfolio, and to date has failed and refused to return the formulas to SICPA despite repeated requests. Socha deliberately had the books of proprietary formulas created shortly before his termination for the express purpose of making the formulas portable following his termination.

11. Socha has admitted that he has in his possession numerous binders containing the SICPA 2003, 2004, and revised 2005 Budget, past, present and future financial information, Capital Expenditure Requests, detailed key customer information (including locations, sales potential, opportunities, and key contacts), human resource data, facility capacity reports, operation reports, manufacturing integration plans, strategic planning documents, key account management activities, cost reduction and cash maximization project, and other vital information, that he kept at home rather than at his SICPA office. These binders have not been returned, as required, following his termination.

12. Socha has attempted to raid SICPA's employees, at a minimum he has contacted Colin Price in an attempt to lure them away from SICPA's employ and compete directly with SICPA at INX. Socha may have contacted other employees that we have not yet uncovered.

13. Based upon information and belief, Socha actively solicited SICPA customers on behalf of INX prior to the time of his termination, specifically, Alcan Menasha, while still being paid a substantial salary by SICPA. Socha is still actively soliciting SICPA customers on behalf of INX.

## COUNT ONE
## Breach of Duty of Loyalty

14.     SICPA restates the allegations contained in paragraphs 1 through 13 of the Complaint.

15.     As a trusted agent of SICPA until February 25, 2005, Socha owed a duty of loyalty not to divulge confidential information to SICPA's competitors either during his employment or by taking any other action in competition with SICPA.

16.     Socha owed a duty of loyalty not to steal proprietary and confidential information from SICPA for any purpose, let alone to directly compete with SICPA.

17.     Prior to his termination, Socha competed with SICPA, used, disclosed, relied upon, and otherwise misappropriated SICPA's confidential and proprietary information, solicited SICPA's customers and potential customers, and conspired with INX to do the same. These activities are all in breach of his duty of loyalty.

## COUNT TWO
## Unfair Competition

18.     SICPA restates the allegations contained in paragraphs 1 through 17 of the Complaint.

19.     Each of the acts committed by Socha on behalf of himself and INX in misappropriating SICPA's confidential and proprietary information and attempting to raid SICPA employee's, constitutes an act of unfair competition. This behavior has caused and will cause SICPA severe and serious injury, both by losing its advantage in the marketplace and damage to SICPA's goodwill and reputation, for which SICPA should be compensated from the Defendant and from which he should be enjoined.

-5-

## COUNT THREE
### Tortious Interference with Contract and
### Intentional Interference With Prospective Business Advantage

20.  SICPA restates the allegations contained in paragraphs 1 through 19 of the Complaint.

21.  Prior to August 14, 2000, SICPA had existing business and contractual relationships with customers and potential customers as an innovator of security solutions and manufacturer of high quality printing inks.

22.  Socha had knowledge of the existing business and contractual relationships with clients and potential clients in the ink industry. Socha disclosed those relationships to INX.

23.  By way of its existing and successful business relationships, SICPA has a legitimate expectation of continued business opportunities with its customers.

24.  SICPA has a legitimate expectation that its current and former employees not interfere with SICPA's prospective business advantage with other potential customers by using company contacts and other confidential and proprietary product and customer information.

25.  Socha, on behalf of and in favor of himself and INX, has engaged in wrongful acts, which include, but are not limited, intentionally and wrongfully contacting or meeting with existing or potential SICPA customers, to solicit business for Socha's new employer, INX, using confidential and proprietary SICPA information to solicit business for INX and attempting to raid SICPA's employees and induce them into directly competing with SICPA.

26. Socha is using SICPA's own information to tortiously interfere with SICPA's contracts and prospective business advantage. As a result, Defendant has maliciously and tortiously interfered with SICPA's prospective business advantage.

27. The Defendant's outrageous conduct constitutes tortious interference and has caused and will cause substantial damage to SICPA.

28. In addition to damages, SICPA is entitled to its attorney's fees.

## COUNT FOUR
### Conversion

29. SICPA restates the allegations contained in paragraphs 1 through 28 of the Complaint.

30. SICPA has a proprietary interest in SICPA's proprietary formulas and NAMT binders containing SICPA budgeting and marketing information.

31. Upon information and belief, subsequent to the termination of his employment, Socha retained certain property belonging to SICPA, including but not limited to a book of SICPA's proprietary formulas that Socha had assembled for the express purpose of making the formulas portable and NAMT binders containing budgeting and marketing information.

32. Despite having no right to do so, Socha has taken SICPA's property and converted it to his own use, thereby depriving SICPA of its property and value of such property.

33. As a result of Socha's conversion of SICPA's property, SICPA has suffered and will continue to suffer monetary damages. SICPA is entitled to damages, including costs and reasonable attorneys' fees, in an amount to be determined at trial.

## COUNT FIVE
## Ohio Uniform Trade Secrets Act

34.  SICPA restates the allegations contained in paragraphs 1 through 33 of the Complaint.

35.  SICPA's formulas, budget and marketing information constitute "trade secrets" under Ohio Rev. Code §1333.61(D), part of the Ohio Uniform Trade Secrets Act ("OUTSA"), O.R.C. §1333.61, *et seq.*

36.  Socha's extensive knowledge of SICPA's formulas was acquired in confidence, and under circumstances giving rise to a duty on Socha's part to maintain the secrecy of the formulas, budget and marketing information and not use information concerning the trade secrets outside the walls of SICPA or for the benefit of anyone other than SICPA.

37.  Socha has misappropriated SICPA's formulas, budget and marketing information in connection with his employment at INX.

38.  As a result of Socha's clear violation of OUTSA, SICPA has been and will continue to be severely and irreparably damaged.

39.  As a result of Socha's blatant misappropriation of SICPA's trade secrets, SICPA has suffered and will continue to suffer substantial damages and is entitled to an award of compensatory damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, SICPA respectfully requests that the Court award SICPA the following relief:

1.  Compensatory damages due to the Defendant's action and any other damages the Court deems proper.

2. Costs, interests, disbursements and penalties in this action as the Court deems proper.

3. Reasonable costs and attorneys' fees as the Court deems proper.

4. All further relief in law or in equity which it may show it is justly entitled.

## JURY DEMAND

Plaintiff SICPA North America, Inc. hereby demands trial by jury on all issues so triable.

_____
Scott A. Lefelar (#0070845)
Millisor & Nobil Co., L.P.A.
9150 South Hills Boulevard, Suite 300
Cleveland, OH 44147-3599
Phone: (440) 838-8800
Fax: (440) 838-8805
slefelar@millisor.com
Attorney for Plaintiff